

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00349-CV

## IN THE INTEREST OF D.J.E., A.J.E., AND A.R.R., CHILDREN

**On appeal from the 24th District Court of Victoria County, Texas.**

## NUMBER 13-08-00350-CV

## IN THE INTEREST OF R.R., A CHILD

**On appeal from the 135th District Court of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellee, the Texas Department of Family and Protective Services (the

Department), brought two suits for termination of parental rights, one against Mary F.,[1] the

---

[1] We use fictitious names for the parents in accordance with recently amended rule of appellate procedure 9.8(b). TEX. R. APP. P. 9.8(b); *see* TEX. FAM. CODE. ANN. § 109.002(d) (Vernon 2002).

biological mother of D.J.E., A.J.E., and A.R.R., and one against appellants, Mary F. and John R., the biological mother and father of R.R.[2]  Following a bench trial addressing both suits, the trial court found that one or more statutory grounds for termination of parental rights existed and that termination was in the children's best interest.  On appeal, Mary and John each raise three issues challenging the trial court's terminating their parent-child relationships with R.R.  Mary raises seven issues challenging the trial court's order terminating her parent-child relationship with D.J.E., A.J.E., and A.R.R.  We affirm both termination orders.

## I.  Background[3]

On October 6, 2006, Deputy Sheriff Vincent Seger and his squad conducted a drug raid of a double-wide trailer thought to be the residence of John and Mary.  Although they found no one in the trailer, they did find a "cookie" of cocaine[4] and drug paraphernalia.

Deputy Seger and his squad moved next door to a single-wide trailer where they found John, Mary, and the three children, D.J.E., A.J.E., and A.R.R., residing.  Mary was pregnant with R.R. at the time.  When John would not consent to a search of the trailer,

---

[2]D.J.E., A.J.E., and A.R.R. are the subjects of appeal number 13-08-00349-CV, trial court cause number 06-10-64,887-A.  R.R. is the subject of appeal number 13-08-00350-CV, trial court cause number 07-5-65,800-B.  The causes were heard together at the trial court level, and although no motion for consolidation has been filed in this Court, one opinion is being issued in the interest of judicial economy because the facts and law relevant to the disposition of both appeals are the same.

The trial court also terminated the parent-child relationship between A.R.R. and John R., her father.  However, John has not appealed from the termination of that relationship.  In addition, the trial court did not terminate the parent-child relationships between D.J.E. and A.J.E. and their father, David E., because it found that termination was not in the children's best interest at that time.

[3]As this is a memorandum opinion and the parties are familiar with the facts, we will not recite the facts here except as necessary to advise the parties of the court's decision and the basic reasons for it.  TEX. R. APP. P. 47.4.

[4]A "cookie" refers to a circular piece of crack cocaine that is generally broken down into smaller units for retail sale.  *See Roberson v. State*, 80 S.W.3d 730, 734 n.1 (Tex. App. –Houston [1st Dist.] 2002, pet. ref'd).

Deputy Seger obtained a warrant. Later, during the search, they found contraband (money) in the trailer and 400 grams of cocaine outside the trailer door.

On October 9, 2006, the Department filed a petition seeking to terminate Mary's parental rights as to D.J.E., A.J.E., and A.R.R. On May 23, 2007, the Department filed a second petition seeking to terminate the parental rights of Mary and John as to R.R. The children's cases were consolidated for purposes of the termination hearing held on April 28, 2008. On May 9, 2008, the trial court entered two final orders, the first terminating the parental rights of Mary and John as to R.R.,[5] the second terminating Mary's parental rights as to D.J.E., A.J.E., and A.R.R. Mary and John appeal from the termination orders.

II. Termination of Mary's Parental Rights as to D.J.E., A.J.E., and A.R.R.

On May 9, 2008, the trial court signed an order terminating the parental rights between Mary and her children, D.J.E., A.J.E., and A.R.R. The trial court found by clear and convincing evidence that termination of the parent-child relationship was in the children's best interest. The decree recites the following predicate grounds for termination: (1) Mary knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) Mary engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; (3) Mary had her parent-child relationship terminated with respect to another child based on a finding that the mother's conduct was in violation of section 161.001(1)(D) or (E) of the Texas Family Code or substantially equivalent provisions of the law of another state; (4) Mary failed to

---

[5]An order terminating Mary's parental rights as to R.R. was entered on April 8, 2008. However, the trial court entered a final order terminating those rights on May 9, 2008. It is from the May order that Mary appeals the termination as to R.R.

3

comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under chapter 262 for the abuse or neglect of the children; and (5) Mary used a controlled substance, as defined by chapter 481 of the health and safety code, in a manner that endangered the health or safety of the children, and failed to complete a court-ordered substance abuse treatment program or after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (M), (O), (P) (Vernon Supp. 2008).

By four issues, Mary challenges the sufficiency of the evidence to support each ground for termination. By her remaining three issues, she complains of the trial court's admission of certain testimony.

### A. Statement of Points

As a preliminary matter, the Department asserts that Mary's insufficient evidence claims in her statement of points are not "sufficiently specific" to allow for appellate review under section 263.405(i). *See id.* § 263.405(i) (Vernon Supp. 2008).[6] We disagree.

While a "claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for review," *see id.*, "specific, nonglobal claims" of insufficiency set out in a statement of points are not precluded from review. *In re S.K.A.*, 236 S.W.3d 875, 899 (Tex.

---

[6]Unless otherwise noted, we cite to the current version of the statute because the changes in the family code that have occurred since the Department filed suit against John and Mary do not impact their issues.

App.–Texarkana 2007, pet. denied) (finding that separate complaints as to each of the separate grounds of termination and the best interest finding satisfy the specificity requirement). A statement of points is specific enough when it allows the trial judge to correct any erroneous findings on the challenged grounds. *See Adams v. Tex. Dep't of Family & Protective Servs.,* 236 S.W.3d 271, 278 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *In re A.J.H.,* 205 S.W.3d 79, 81 (Tex. App.–Fort Worth 2006, no pet.).

In her statement of points, Mary asserted that the evidence for each termination ground was legally and factually insufficient. She made this assertion as a separate point for each ground. For example, in a point challenging an endangerment finding, Mary set out the following: "The evidence presented to the trial court . . . was legally and factually insufficient to support the [c]ourt's finding that [Mary F.] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical and emotional well-being of the children."

We conclude that Mary's evidentiary complaints set out in her statement of points are sufficiently specific to satisfy the requirements of subsection (i). *See* TEX. FAM. CODE ANN. § 263.405(i); *In re S.K.A.*, 236 S.W.3d at 901. Her statement of points was specific enough to allow the trial judge to correct any erroneous findings on the challenged grounds. *See Adams*, 236 S.W.3d at 278. Mary has preserved the sufficiency issues for our review.

### B. Challenges to Sufficiency of the Evidence

By issues one, three, four, and five, Mary challenges the sufficiency of the evidence to support each ground of termination. She does not, however, challenge the best interest finding. Moreover, although Mary contends the evidence is legally and factually insufficient, she argues only that there is no evidence to support the trial court's findings—a

5

legal sufficiency argument. Therefore, we construe Mary's four evidentiary issues as legal sufficiency challenges.

### 1. Standard of Review

On appeal, any complaint that the evidence is legally insufficient to support the findings necessary for termination is analyzed by a heightened standard of appellate review. *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002) (defining the standard of review for legal sufficiency). "[T]he evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 747 (1982)). Under the clear and convincing standard, an appellate "court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable [factfinder] could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). We assume all disputed facts were resolved "in favor of [the] finding if a reasonable factfinder could do so." *Id. (*quoting *In re J.F.C.*, 96 S.W.3d at 266).

### 2. Endangerment Findings

By her first issue, Mary challenges the trial court's findings concerning endangerment of the children. Mary contends that the trial court erred in finding (1) that she knowingly placed the children, or allowed the children to remain, in conditions or with persons who engaged in conduct that endangered the physical or emotional well-being of the children, *see* TEX. FAM. CODE ANN. § 161.001(1)(D), and (2) that she engaged in conduct that endangered the children. *See id.* § 161.001(1)(E). Mary asserts that Deputy Seger provided no evidence to support these findings. She specifically claims that there is no evidence to show the children were in any danger because of her or the place where

6

they resided. Mary also contends that there is no evidence that one of the children was observed in possession of the toy which tested positive for cocaine or that she packed the "diaper" bag that contained the drugs.[7]

### a. Applicable Law

Section 161.001(1) of the Texas Family Code states, in relevant part, that a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; [or]

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

*Id.* § 161.001(1)(D), (E). "[A] finding of one enumerated factor [under section 161.001(1)] coupled with a finding of the child's best interest is sufficient to support termination." *Yonko v. Tex. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 242 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (op. on rehr'g) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)); *see* TEX. FAM. CODE ANN. § 161.001.

Both subsection (D) and subsection (E) only require that the parent "endanger" the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(1)(D), (E). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Under either subsection (D) or (E), it is not necessary that the parent's

---

[7]Because the evidence concerning these two statutory grounds for termination is interrelated, we consolidate our discussion of the evidence supporting the findings. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.–Fort Worth 2003, no pet.); *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.–Tyler 1991, writ denied) (recognizing the link between a parent's conduct and a child's conditions and surroundings).

conduct be directed at the child or that the child actually suffer injury. *See Boyd*, 727 S.W.2d at 533.

Under section 161.001(1)(D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.–Fort Worth 2000, pet. denied) (op. on rehr'g). Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.–Fort Worth 1995, no writ). Under section (D), we must examine the time before the children's removal to determine whether the environment, itself, posed a danger to their well-being. *See Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.–Corpus Christi 1993, no writ); *In re S.H.A.*, 728 S.W.2d 73, 84 (Tex. App.–Dallas 1987, writ ref'd n.r.e.) (en banc).

Under section 161.001(1)(E), our inquiry focuses on conduct of the parent, *see In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.–Texarkana 2003, no pet.), and must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. TEX. FAM. CODE ANN. § 161.001(1)(E); *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.–Eastland 1999, no pet.). We consider the parent's conduct both before and after the child is born. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.–San Antonio 2007, no pet.); *In re R.F.*, 115 S.W.3d 804, 810 (Tex. App.–Dallas 2003, no pet.). Conduct that "subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *In re A.J.H.*, 205 S.W.3d at 81 (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex.

8

App.–Fort Worth 2004, pet. denied)); *Asjes v. Tex. Dep't of Protective & Regulatory Servs.*, 142 S.W.3d 363, 369 (Tex. App.–El Paso 2004, no pet.); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.–Dallas 1995, no writ). In addition, the use of drugs during pregnancy may be conduct that endangers the physical and emotional well-being of the child. *In re R.F.*, 115 S.W.3d at 810. Continued narcotic use after the children's removal is also conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *In re S.K.A.*, 236 S.W.3d at 901 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (en banc)).

### b. Testimony

#### (1) Deputy Sheriff Vincent Seger

Deputy Seger testified that he was employed by the Victoria County Sheriff's Office on October 6, 2006, when he participated in a drug raid of two trailers located next door to each other—a double-wide trailer and a single-wide trailer. On the kitchen counter in the double-wide trailer, Deputy Seger found a knife that tested positive for cocaine, a "cookie" of cocaine, and drug paraphernalia, including scales, sealed containers, cups, two microwaves, and a box of baking soda. Deputy Seger testified that, in his opinion, crack cocaine or cocaine base was being manufactured in the trailer. He also testified that "there's no way that somebody could have been present and not know what was going on." No one was found in the double-wide trailer. It appeared to Deputy Seger as if John and Mary were moving from the double-wide trailer to the single-wide trailer.

Deputy Seger and his squad also searched the single-wide trailer where John, Mary, and the children were residing; all were at home at the time of the search. In the single-wide trailer, Deputy Seger discovered contraband—money in the trailer and 400 grams of

9

powdered cocaine in a blue "diaper" bag Mary was carrying when she was stopped as she left the trailer with the children. The cocaine was found when the bag was searched. A cup containing cocaine base and a small toy that tested positive for cocaine were also found in the "diaper" bag. Deputy Seger testified that he had seen one of the children playing with the toy earlier that morning. In the single-wide trailer, Deputy Seger also found a police scanner and ammunition, but no firearms. This trailer, like the double-wide trailer, was sparsely furnished and in disarray. In the single-wide trailer, they found animal feces and urine, and a litter of puppies, including a dead puppy wrapped in a sheet.

### (2) Caseworker M.B.

M.B., an employee of Child Protective Services and the children's caseworker, testified that, as part of her service plan, Mary provided a certificate of completion for the drug and alcohol program at Billy T. Cattan. Mary's psychological evaluation had also been completed. In addition, Mary indicated to M.B. that she had attended parenting classes on two separate occasions, but had not provided a certificate of completion. However, Mary tested positive for drugs on several occasions after the children were removed from the home, including January 4, 2007, February 6, 2007, April 11, 2007, May 17, 2007 (the day after R.R. was born), and September 18, 2007.[8] Initially, Mary denied that she would be positive for any drugs but later indicated that it was all part of being a drug addict, thus, admitting to M.B. that she was a drug addict.

According to M.B., Mary was negative for all drugs on November 23, 2007, during which time she had moved from her father's residence to the Perpetual Help Home where she was to attend parenting classes and receive counseling. Mary left the Perpetual Help

---

[8]M.B. tested Mary randomly for drugs using an oral swab drug test.

Home before she completed the program and no certificate was issued. In January 2008, Mary moved into her own residence. On February 6, 2008, Mary again tested negative for all drugs. But, on April 14, 2008, the last time M.B. tested Mary for drugs and only one month after she received her certificate from the Billy T. Cattan program, Mary tested positive for cocaine.

In addition, M.B. testified that, in 2003, D.J.E. was born negative for drugs, but Mary was positive for marijuana at his birth. In May 2004, A.J.E. was born positive for cocaine. Because of Mary's drug usage, another case was opened for A.R.R., who was born in July 2006. Mary was pregnant with R.R. when the other three children were removed from the home. When R.R. was born on May 16, 2007, there was a finding of cocaine in the baby's meconium indicating that there had been chronic and consistent drug use throughout the pregnancy. The evidence also reveals that Mary was later placed at a rehabilitation center[9] but was discharged because of another pregnancy. M.B. testified that the Department had concerns for the child Mary was carrying because of her recent use of cocaine.

### c. Analysis

The testimony presented establishes that the conditions in Mary's home were unsuitable for children. The home in which they were living and the home from which they had recently moved had drugs and drug paraphernalia left in places accessible to the children. It appears as if crack cocaine or cocaine base was being manufactured in at least one of the trailers.

The children were in physical danger. Drugs, knives and toys exposed to cocaine were left within their reach. It could be inferred that Mary placed the children's toy in the

---

[9]It is unclear if this rehabilitation center is the Perpetual Help Home where Mary was placed in late November 2007.

bag with the cocaine, thus, allowing for the possibility of contamination. In addition, the home environment was sparsely furnished and in disarray. The children were exposed to an unhealthy environment. Thus, there is evidence that Mary knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D). Mary's conduct created an environment that was the source of endangerment to the children's physical or emotional well-being. *In re D.T.*, 34 S.W.3d at 633; *In re W.S.*, 899 S.W.2d at 776. Examining the time before the children's removal, the environment itself posed a danger to their well-being. *See Ybarra*, 869 S.W.2d at 577.

In addition, the testimony shows that although Mary completed a drug and alcohol program, her psychological evaluation, and some parenting classes, Mary also put her children at risk because she tested positive for cocaine or marijuana on numerous occasions before and after the children were removed from the home as well as before and after the birth of each child. In addition, the fact that two of her children were born positive for cocaine supports the logical inference that Mary used drugs while pregnant and thereby exposed the children to injury. Also, Mary tested positive for cocaine while under court order. Mary acknowledged she was a drug addict. In addition, although Mary was negative for all drugs from November 23, 2007 through February 6, 2008, only one month after she received her certificate from the Billy T. Cattan program, Mary tested positive for cocaine—again while under court order.

Based on this evidence, Mary engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). She exposed the children to injury and jeopardized their well-being, *see Boyd*, 727 S.W.2d at 533, through a voluntary, deliberate, and conscious course of conduct. *See* TEX. FAM. CODE

12

ANN. § 161.001(1)(E); *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d at 228. Because of Mary's drug use both before and after the children were born, the children were subjected to a life of uncertainty and instability that endangered the physical and emotional well-being of each child. *See In re T.N.S.*, 230 S.W.3d at 439; *A.J.H.*, 205 S.W.3d at 81. It could be inferred that Mary's drug addiction and its effect on her life affected her ability to parent, thus, establishing an endangering course of conduct. *See Asjes*, 142 S.W.3d at 369. In addition, the evidence established that the use of drugs during at least two of her pregnancies endangered the physical and emotional well-being of those children. *See In re S.K.A.*, 236 S.W.3d at 901; *In re R.F.*, 115 S.W.3d at 810.

Therefore, looking at all of the evidence in the light most favorable to the finding, we conclude that a reasonable factfinder, the trial court in this case, could have formed a firm belief or conviction that its endangerment findings were true. *See In re J.L.*, 163 S.W.3d at 84; *In re J.F.C.*, 96 S.W.3d at 266. These enumerated findings are supported by clear and convincing evidence. *See Holick*, 685 S.W.2d at 20. The trial court could have reasonably formed a firm belief or conviction that Mary knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(1)(D), and "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child[ren]." *See id.* § 161.001(1)(E); *In re R.D.S.*, 902 S.W.2d 715, 715-16 (Tex. App.–Amarillo 1995, no pet.) (affirming the trial court's judgment terminating a mother's parent-child relationship). We conclude that the evidence was legally sufficient to support the trial court's findings under either subsection (D) or subsection (E) of section 161.001(1) of the Texas Family Code.

13

### 3. Other Findings

If the evidence is sufficient to support termination on one of multiple pleaded statutory grounds, then the termination will be upheld. *See In re J.L.,* 163 S.W.3d at 84; *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.–Fort Worth 2007, no pet.); *In re B.K.D.,* 131 S.W.3d 10, 16 (Tex. App.–Fort Worth 2003, pet. denied) (per curiam) (providing that along with a best interest finding, "a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination"); *see also* TEX. R. APP. P. 47.1. Having concluded the evidence is sufficient to support the termination on not one but two statutory grounds and because the finding that termination is in the best interest of the children has not been challenged, we need not address the remaining challenged statutory grounds for termination. *See In re A.V.*, 113 S.W.3d at 362.

We overruled Mary's first, third, fourth, and fifth issues.

### C. Challenges to Testimony

By her second issue, Mary argues that the trial court erred and abused its discretion in admitting Deputy Seger's testimony regarding the results of field and lab sample drug testing. She contends that Deputy Seger was not qualified to give such testimony and that no business records were offered to support the testimony. She also asserts that Deputy Seger's testimony was not substantiated by a chain of custody and that it was conjectural and speculative. However, Mary did not preserve these arguments by raising proper and timely objections in the trial court. *See* TEX. R. APP. P. 33.1(a) (requiring a specific objection and a ruling from the trial judge to preserve error for appellate purposes). Therefore, she has waived these arguments on appeal. *See id.*

By her sixth issue, Mary asserts that M.B., the children's caseworker, was not qualified to give an expert opinion, the results of the drug testing were not the business

records of the lab that collected the test samples, and M.B.'s testimony regarding the tests was based on hearsay. However, in accordance with rule 38.1(i) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and to the record. *Id.* at rule 38.1(i). Because Mary provided no citations to either authority or to the record in support of these arguments, this issue is inadequately briefed. We overrule Mary's sixth issue.

Finally, by her seventh issue, Mary contends that the trial court abused its discretion in allowing testimony from J.C., the children's foster parent, regarding the medical condition of R.R. and the future medical prognosis of the child. She asserts that J.C. was not qualified to give an expert opinion on medically related matters.

Mary complains of the admission of the following testimony:

Q: [Dep't Counsel] All right. And developmentally, [R.R.] is approaching almost one year of age. Where is he developmentally?

[John's Counsel]: Judge, I'm going to object to any questions that call for expert opinions, medical opinions, unless [J.C.] is capable of rendering a medical opinion.

[Court]: Overruled. You can answer the question.

A: [J.C.] Well, developmentally, physically is, I think, where most of the delay is from what they're telling me in OTMPT. Currently, he's starting to pull himself up and kind of walk with push toys and since the [cerebral palsy] affects his left side, his hand is fisted and drawn in, so right now that's one of the main, I guess, issues that we're working with. We won't really know any extent until he's verbal, which he currently is not. When he's a little bit older they'll further evaluate.

. . .

Q: [Dep't Counsel] All right. You used a term super, or there is a term, super ventricular tachycardia?

A: [J.C.] Uh-huh.

15

Q: [Dep't Counsel] All right. That's the speed of his heart?

A: [J.C.] Correct.

Q: [Dep't Counsel] What seems to have been the cause of that?

[John's Counsel]: Judge, I, again, object, to – the question calls for expert medical opinion. [J.C.] is not qualified to render opinions on the medical condition of the child.

[Court]: Overruled. You can answer the question.

A: [J.C.] From what I have seen in his, the records that the doctor has shared with me, he was born exposed to drugs. He was going through massive withdrawal and that's when they put him on the phenobarbital to control the heart rate, to control seizure action because he has had seizures in my home. When we went to the NICU at Driscoll at 22 days, they told us that if the phenobarbital did not help his withdrawals, they were going to try methadone, so most of the issues that he has, from what the specialist have told me, have all been because of the drug use.[10]

We first note that the trial objections to this testimony were raised by John, not Mary. *See Bohls v. Oakes*, 75 S.W.3d 473, 477 (Tex. App. San Antonio 2002, pet. denied) ("[W]hen there are multiple defendants, as in this case, each defendant generally must lodge his own objections in order to preserve error."); *cf. Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 556-57 (Tex. App.–Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998) (permitting the trial court to order joint objections to save time); *Celotex Corp. v. Tate*, 797 S.W.2d 197, 201-02 (Tex. App.–Corpus Christi 1990, writ dism'd by agr.) (holding that error was preserved when a trial court allowed a defendant's request that one defendant's objections would preserve error for all defendants). Mary did

---

[10]No hearsay objection was made to this testimony.

16

not lodge her own objections in order to preserve error, and the parties did not request that joint objections be permitted.

Nonetheless, generally, the admission and exclusion of evidence is committed to the sound discretion of the trial court. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). In this case, we conclude that the trial court did not abuse its discretion because Texas Rule of Evidence 701 provides the guiding rule in this case. *See* TEX. R. EVID. 701 (providing that if the witness is not testifying as an expert, her opinion and inference testimony is limited to that which is rationally based on the perception of the witness and helpful to understand the testimony or to determine a fact issue); *see also* TEX. FAM. CODE ANN. § 104.001 (Vernon Supp. 2008) (setting out that the Texas Rules of Evidence apply in family law cases as in other civil cases, unless otherwise provided). J.C. was not testifying as an expert, but as the foster mother of the children. J.C.'s testimony was rationally based on her perception and was helpful in understanding R.R.'s developmental status and what J.C. understood to be the cause of his issues, including tachycardia. Thus, the trial court did not abuse his discretion in admitting the complained-of testimony.[11] We overrule Mary's seventh issue.

### III. Termination of Mary's Parental Rights as to R.R.

---

[11]Mary also asserts that J.C.'s testimony was conjectural and speculative. However, Mary did not preserve these objections by raising them in the trial court. *See* TEX. R. APP. P. 33.1(a) (requiring a specific objection and a ruling from the trial judge to preserve error for appellate purposes). Therefore, she has waived these complaints on appeal. *See id.*

17

On April 8, 2008, after a hearing where Mary appeared through her attorney of record and announced ready, the district court signed an order terminating Mary's parental rights as to her minor child, R.R. The trial court found by clear and convincing evidence that termination of the parent-child relationship between Mary and R.R. was in the child's best interest. The April 8 order recites the following predicate grounds for termination: (1) Mary engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and (2) Mary executed, before or after the suit was filed, an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by chapter 161 of the Texas Family Code.[12] Having made the above findings, the trial court ordered that the parent-child relationship between Mary and R.R. be terminated.

On May 9, 2008, the trial court entered a final order terminating the father's parental rights. In the May 9 order, the trial court also found that the parental rights of Mary to R.R. had been terminated on April 8, 2008, and again ordered the termination of the parent-child relationship between Mary and R.R.

By one issue in this appeal from the order terminating her parental rights as to R.R., Mary contends that there is no evidence to support the trial court's finding in its May 9, 2008 order that her rights were terminated by a prior order on April 8, 2008. By two additional issues, Mary asserts that there is no evidence to support the trial court's finding that she signed an unrevoked or irrevocable affidavit of voluntary relinquishment of R.R. *See* TEX. FAM. CODE ANN. § 161.001(K).

---

[12] In support of an apparent constructive abandonment determination, the trial court also found that the Department had made reasonable efforts to return the child to the mother. *See* TEX. FAM. CODE ANN. § 161.001(1)(N)(i) (Vernon Supp. 2008). Because the termination is upheld on the basis of the trial court's unchallenged endangerment and best interest findings, we need not address this enumerated ground. *See* TEX. R. APP. P. 47.4.

A.  April 8, 2008 Order as to R.R.

In her first issue, Mary asserts that, during the trial, the Department did not offer into evidence the April 8 order of termination to support the trial court's finding in its May 9, 2008 order that her rights had been terminated by prior order.  However, in the concluding moments of the trial, the Department asked the trial court to take judicial notice of each of the files in the causes in the consolidated trial, particularly "the termination order of April the 8th of 2008 on the mother . . . ." in the R.R. file.  *See* TEX. R. EVID. 201(b) (providing that judicial notice may be taken upon request at any stage of the proceedings of any adjudicative fact which "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *In re Shell E&P, Inc.*, 179 S.W.3d 125, 130 (Tex. App.–San Antonio 2005, orig. proceeding) (citing *Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961) ("The trial judge was entitled to take judicial notice of his own prior order entered in a related case between substantially the same parties.")); *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726 (Tex. App.–Corpus Christi 1996, writ denied).  Mary did not object to the trial court taking judicial notice of the April 8, 2008 termination order, and it did so.  Thus, the April 8 order was properly before the trial court, and there was evidence to support the trial court's finding that Mary's parental rights to R.R. had been terminated by prior order on April 8, 2008.  Mary's first issue is overruled.

B.  Termination Findings as to R.R.

In her second issue, Mary contends that there is no evidence to support the court's finding that she had signed an unrevoked or irrevocable affidavit of voluntary relinquishment.  *See* TEX. FAM. CODE ANN. § 161.001(1)(K).  In her third issue, while generally contending that there is no evidence to establish the April 8, 2008 findings that

19

supported termination, Mary argues only that the evidence fails to support the finding that she had signed an unrevoked or irrevocable affidavit of voluntary relinquishment—the same ground about which she complains in her second issue. *See id.* Mary does not challenge the trial court's remaining ground for termination—its endangerment finding. *See id.* § 161.001(1)(E). And, Mary does not challenge the trial court's best interest finding.[13] *See id.* § 161.001(2) (Vernon Supp. 2008).

In this case, the trial court's unchallenged endangerment finding coupled with its finding that termination was in R.R.'s best interest is sufficient to support termination. *See Yonko*, 196 S.W.3d at 242. Therefore, we need not address the issues raised and arguments made in these issues. We overrule Mary's second and third issues.

IV. Termination of John's Parental Rights as to R.R.

On May 9, 2008, the trial court terminated the parent-child relationship between R.R. and his father, John. The trial court found three predicate grounds for termination, *see* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (Q), and that termination was in R.R.'s best interest. *See id.* § 161.001(2). By three issues, John challenges the sufficiency of the evidence to establish that he endangered R.R.'s physical or emotional well-being. *See id.* § 161.001(1)(D), (E). John also argues that the trial court abused its discretion in determining his incarceration created an inability to care for his child for not less than two years from the date of the filing of the petition, *see id.* § 161.001(1)(Q), and in determining it was in the best interest of R.R. to terminate the parental rights of his father and appoint

---

[13]Because Mary does not challenge these rulings in her appellant's brief, we do not address the sufficiency of the evidence to support the court's endangerment and best-interest determinations. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

the Department as his managing conservator. *See id.* § 161.001(2). We do not, however, reach the merits of John's appeal.

Section 263.405 of the Texas Family Code governs an appeal of a final order related to a child under Department care. *Id.* § 263.405. A party who intends to appeal a trial court's termination order is required to timely file "a statement of the point or points on which the party intends to appeal." *Id.* § 263.405(b) (Vernon Supp. 2008);[14] *In re K.C.B.*, 251 S.W.3d 514, 515 (Tex. 2008) (per curiam). The statement must be filed with the trial court not later than the fifteenth day after the date the final order is signed. TEX. FAM. CODE ANN. § 263.405(b). The supreme court has recently held that a trial court is authorized to grant an extension of time to file a statement of points if good cause for the failure to timely file the statement is shown. *In re M.N.*, 262 S.W.3d 799, 803-04 (Tex. 2008) (citing TEX. R. CIV. P. 5). On appeal, this Court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of points. TEX. FAM. CODE ANN. § 263.405(i).

In this case, on May 9, 2008, the trial court signed the final order terminating John's parental rights as to R.R., and on May 27, 2008, more than fifteen days after the termination order was signed, John filed his motion for new trial and statement of points for appeal addressing the termination of his parent-child relationship with R.R. *See id.* §

_____

[14]The version of the statute in effect at the time of the Department's filing of its petitions in this case stated that "[n]ot later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for a new trial." Act of June 15, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2397-98, amended by Act of June 16, 2007, 80th Leg., R.S., ch. 526, § 2, 2007 Tex. Gen. Laws 929; *see* Act of June 16, 2007, 80th Leg., R.S., ch. 526, § 6, 2007 Tex. Gen. Laws 929, 929-30 ("The changes in law made [to this subsection] apply only to a suit affecting the parent-child relationship filed on or after the effective date of this Act [, June 16, 2007]. A suit affecting the parent-child relationship filed before the effective date of this Act is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose."). The Department filed suit for termination of parental rights as to D.J.E., A.J.E., and A.R.R. on October 9, 2006, and for termination of parental rights as to R.R. on May 23, 2007.

263.405(b).  And, we find no motion for extension of time to file his statement of points in the record.  *See In re M.N.*, 262 S.W.3d at 803-04.  Because John did not timely file a statement of points with the trial court, we cannot consider the issues he has raised on appeal.

## V.  Conclusion

We affirm the orders terminating Mary F.'s parental rights as to R.R., D.J.E., A.J.E., and A.R.R, and John R.'s parental rights as to R.R.


                                       NELDA V. RODRIGUEZ
                                       Justice

Memorandum Opinion delivered and
filed this 11th day of December, 2008.