**Affirmed and Memorandum Opinion filed April 2, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00812-CV

## IN THE INTEREST OF T.L.R AND T.J.R., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2013-05098J**

## M E M O R A N D U M   O P I N I O N

S.D.A. (the Mother) appeals from the decree terminating her parental rights to her Children, T.L.R. and T.J.R. (the Children).[1] The Mother raises three issues challenging the legal and factual sufficiency of the evidence supporting the two predicate termination grounds recited in the judgment and the trial court's finding that termination of the Mother's parental rights is in the Children's best interest. We affirm.

---

[1] To protect the identity of the minors, we have not used the names of the Children, parents, or other family members. *See* Tex. R. App. P. 9.8.

# I. BACKGROUND

The Children at issue in this suit are T.L.R (Tonya) who was born October 27, 2005, and T.J.R. (Troy), who was born October 19, 2006.[2] In 2013, the Texas Department of Family and Protective Services (the Department) received a referral from neighbors and the manager at the Mother's apartment complex alleging that the Mother was starving her Children after Troy, her then six-year-old son, was found wandering around the complex complaining that he was hungry.

The Department filed suit for protection of the Children on September 16, 2013. That day, the trial court signed an emergency order for protection of the Children, appointing the Department temporary managing conservator of the Children. On September 26, 2013, the court conducted a full adversary hearing, at which the Mother and her appointed counsel appeared. The court found sufficient evidence to support the Children's removal from the home, and ordered the Children to remain in the temporary conservatorship of the Department. The court ordered the Mother to comply with the Department's service plan to obtain return of the Children and warned that the failure to comply could result in the restriction or termination of parental rights.

On October 17, 2013, the court appointed Child Advocates, Inc. (the Advocate) as guardian ad litem for the Children. On November 12, 2013, the court signed additional temporary orders requiring the Mother to complete the services in the Department's amended family service plan and setting out specific requirements for the Mother to obtain the return of the Children. Thereafter, the trial court conducted regular status and permanency hearings to monitor the

---

[2] The Children's alleged father named on their birth certificates is deceased. When the Children were born, the Mother was married to L.C. (the Husband), who was therefore their presumed father. *See* Tex. Fam. Code Ann. § 160.204(a)(1) (West 2014). The Mother claimed the Husband is not the biological father of either child. The parental rights of the Husband and any unknown father were also terminated, but they are not parties to this appeal.

Mother's progress in completing these services and to assess the Children's welfare.

Trial to the court was held September 25, 2014. The Department called the Mother to testify at trial. The Department's supervisory caseworker, Debra Hatley, also testified briefly about her opinion that termination would be in the Children's best interest because of the Mother's long history of drug use. The Advocate also testified about her recommendations for termination of parental rights and placement of the Children. *See* Tex. Fam. Code Ann. § 107.002(e) (West 2014) (setting out the guardian ad litem's duty to file reports and testify regarding her recommendations relating to the best interests of the children and the reasons for the recommendations). In addition, the Children's half-sister, Jasmine, testified that she is caring for the Children and wants to adopt them. Finally, the Mother's friend, James, testified that he would be able to help support the Mother and the Children and he would be a role model for Troy. At the conclusion of the trial, the court granted the Department's request for termination of the Mother's parental rights. On September 29, 2014, the trial court signed a final judgment reciting that the Mother's parental rights were terminated based on findings that termination is in the Children's best interest and that the Mother committed acts establishing the predicate termination grounds set out in subsections E and O of Texas Family Code Section 161.001(1). Tex. Fam. Code Ann. §§ 161.001(1)(E), (O), 161.001(2) (West 2014). The Department was appointed sole managing conservator of the Children. Appellate counsel was appointed for the Mother, who filed a timely notice of appeal.

## II.    BURDEN OF PROOF AND STANDARDS OF REVIEW

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex.

Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence

4

that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

We consider and weigh all of the evidence, including disputed or conflicting evidence, in reviewing termination findings for factual sufficiency of the evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

## III. ANALYSIS

### A. The Department's Failure to Answer Discovery

On September 11, 2014, shortly before the start of trial, the Mother's appointed counsel filed a trial brief in which he argued that the Department was prohibited from introducing evidence or testimony, except from a party, about matters that were not disclosed in response to the unanswered discovery he had served on the Department. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (applying former rule 215(5)). The Texas Rules of Civil Procedure prescribe the penalty for failing to answer or supplement discovery requests.

> (a) Exclusion of Evidence and Exceptions. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or

5

> supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a).

Included in the unanswered discovery were the Mother's requests for admissions. *See* Tex. R. Civ. P. 198.1. If a response to a request for admissions is not timely served, the request is considered admitted without the necessity of a court order. Tex. R. Civ. P. 198.2(c). A matter admitted under Rule 198 is conclusively established unless the court permits the party to withdraw or amend the admission. Tex. R. Civ. P. 198.3. Withdrawal or amendment may be permitted if the party shows good cause and the court finds the parties relying on the admissions will not be unduly prejudiced. *Id.* 198.3(a), (b). An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce controverting testimony in any legal proceeding related to the action. *Shaw v. Nat'l Cnty. Mut. Fire Ins. Co.*, 723 S.W.2d 236, 238 (Tex. App.—Houston [1st Dist.] 1986, no writ).

At a pre-trial hearing, the Department's "discovery counsel" informed the court that she had searched the Department's computer and paper records and found no evidence that the Department had received any discovery requests from the Mother's counsel. The Mother's counsel provided a fax confirmation showing that the Department had received the discovery requests, however. The Department then requested a continuance and leave to answer the requested discovery, arguing that the failure to answer was an accident or mistake. *See Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (stating that good cause for withdrawing deemed admissions "is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference"). The trial court denied the requests for a continuance and leave to answer the discovery.

6

At the end of the trial, the Mother's counsel admitted in evidence the unanswered requests for admissions. The Mother argues on appeal that these unanswered requests for admissions were deemed against the Department, conclusively establishing that the Department had no evidence to support termination of her parental rights.

We first note that the Mother's requests for admissions included admissions that the Department had no evidence to support the predicate termination grounds and best-interest finding. Requests for admission should be used as "a tool, not a trapdoor." *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (quoting *U.S. Fid. and Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)). When requests for admissions are used as intended to address uncontroverted matters or evidentiary issues like the authenticity or admissibility of documents, deeming admissions by default is unlikely to compromise presentation of the merits of a case. *Wheeler*, 157 S.W.3d at 443. Requests for admissions were intended to "eliminat[e] matters about which there is no real controversy" and were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam) (quoting *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 208 (1950)). But when a party uses deemed admissions to try to preclude presentation of the merits of a case, due-process concerns arise. *See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991). "Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults." *Marino*, 355 S.W.3d at 634. Absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions for discovery abuses. *Wheeler*, 157 S.W.3d at 443.

Secondly, when unanswered admissions are deemed against a party, the party relying on the admissions must protect the record by objecting to

7

controverting evidence on the facts at issue; otherwise, the admissions are waived. *See Marshall v. Vise*, 767 S.W.2d 699, 699 (Tex. 1989); *see also Fiebig v. Fiebig*, No. 14-12-01166-CV, 2012 WL 9390623, at *3 (Tex. App.—Houston [14th Dist.] Oct. 22, 2012, no pet.) (mem. op.) (because the party who relied on deemed admissions as proof failed to object to admission of an affidavit controverting matters established by the deemed admissions, he waived his reliance on the deemed admissions).

The Mother testified at trial and her testimony supported the elements of the Department's case. The Mother acknowledged her long history of drug use, her positive drug tests during the pendency of this case, and her criminal history, among other matters as more fully set out below. No objections were lodged to the Mother's testimony about matters that were not disclosed in discovery. During trial, the Mother's counsel made four specific objections to the admission of evidence that had not been disclosed in discovery. First, the court sustained both the Mother's initial objection and subsequently re-urged objection to the Department's admission of the results from the Mother's positive drug tests because of the Department's failure to produce them in discovery. In addition, the court granted the Mother's request to exclude the testimony of the caseworker regarding the Mother's failure to complete the tasks and services required by the Department's family service plan because of the unanswered discovery. The Mother also objected to the Department's inquiry about her criminal record, but the objection was overruled. No further objections were lodged to the Department's continued questioning about the Mother's criminal history or any other subjects related to the Department's failure to answer the Mother's discovery.

Therefore, we conclude that the Mother waived the deemed admissions and the termination findings were not conclusively established against the Department. *See Fiebig,* No. 14-12-01166-CV, 2012 WL 9390623, at *3; *see also USAA Cnty.*

8

*Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding the failure to object testimony about the cause of the damage to the insured's car waived insurer's right to rely upon any admissions which were controverted by testimony admitted at trial without objection).

**B. Predicate Termination Findings under Section 161.001(1)**

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections E and O of Family Code Section 161.001(1), which provide that termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . . [and]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; . . . .

Tex. Fam. Code Ann. § 161.001(1)(E), (O) (West 2014).

**C. Endangerment**

In her first issue, the Mother asserts that the evidence is legally and factually insufficient to support the termination of her parental rights due to endangering conduct under Family Code Section 161.001(1)(E).

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex.

9

1996). Under subsection E, the evidence must show the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury. *In re U.P.*, 105 S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied).

### a. *Parental Drug Use*

Endangerment under subsection E may include evidence of drug use and its effect on a parent's life and ability to perform the duties of a parent. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("It necessarily follows that the endangering conduct may include . . . evidence of drug usage."); *see also In re U.P.,* 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A parent's drug use can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Proof of a parent's pattern of illegal drug use constitutes endangering parental conduct because it exposes a parent to incarceration or impairment. *In re D.J.W.*, 394 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct.

*Asjes v. Tex. Dep't of Protective & Regulatory Servs.*, 142 S.W.3d 363, 370 (Tex. App.—El Paso 2004, no pet.).

The Mother admitted she had been using drugs for the past sixteen to seventeen years. The Mother also admitted she tested positive for illegal drugs several times during the pendency of these proceedings after the Children were removed from her care. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc). The Mother acknowledged she tested positive for cocaine on September 9, 2013, around the time that this suit was filed. The Mother also admitted that she used cocaine around the time of the full adversary hearing on September 26, 2013, but she did not remember the results of the test conducted that day. She also admitted that her drug tests on November 12, 2013, and March 11, 2014 were positive for cocaine. In addition to cocaine, the Mother also admitted using marijuana and K-2, synthetic marijuana, although she acknowledged that cocaine was her drug of choice. She testified that she last used drugs on April 26, 2014, before she entered an inpatient drug treatment program. She acknowledged another positive hair follicle test on June 19, 2014, but she was not sure if the positive result was from her prior use before entering treatment.

Although the Mother claimed that she did not use illegal drugs after her release from rehabilitation, she later acknowledged that she took drugs again after her release. This testimony is inconsistent with her testimony that she last used drugs before she entered inpatient treatment in April 2014. The Mother admitted that the Children were in the Department's custody because she tested positive for cocaine. The Mother agreed she had a drug problem, but testified she was in recovery at the time of trial and asserted that she remained drug-free. In support of

11

her claim, she provided negative results from urinalyses performed on May 8, June 16, and June 18, 2014, which were admitted in evidence. She testified she had completed a two-month inpatient drug treatment program. We note that these negative tests were during the time the Mother was engaged in inpatient drug treatment. No tests were provided after the Mother's release from rehabilitation. The Mother stated she is committed to staying sober and has enrolled in outpatient treatment. She provided a log showing her attendance at meetings and counselling sessions from May 3, 2014, through June 18, 2014. No evidence that the Mother participated in therapy, counseling, or meetings after her release from inpatient treatment was included, however.

The Mother acknowledged that she had been treated for her drug use three times during the past seventeen years and had relapsed three times. She explained that she had maintained her sobriety for a four-year period once, but she had relapsed after the Children's father died on June 8, 2007, when the Children were both very young. She acknowledged that she was not "there for [the Children]." Before her drug rehabilitation treatment in 2014, she was last treated in 2011. She testified that in the past, she had remained sober after drug treatment for only a month or two. She claimed that this time would be different because she is engaged in a 12-step program to address her dependency.

The Mother claimed the Children were not with her when she used drugs; they were with family or a babysitter. She acknowledged, however, that she returned home after using drugs, and did not deny that she was under the influence of drugs when the Children were present. The Mother also claimed she had not used cocaine while pregnant.

### b. *Criminal Activity and Incarceration*

The Mother admitted having several criminal convictions from 1999 until

2009, including five convictions for prostitution, one for manufacture and delivery of a controlled substance, and one for possession of a controlled substance. She testified that in 2008, she was sent to jail, and the Children lived with her mother. Her most recent conviction was for prostitution on May 10, 2009.

While a parent's incarceration, standing alone, will not prove endangerment under subsection E, it is a factor for consideration by the trial court on the issue of endangerment. *Boyd,* 727 S.W.2d at 533–34; *Asjes*, 142 S.W.3d at 370. If the evidence of criminal behavior, including imprisonment, shows a course of conduct that endangers the physical or emotional well-being of the child, a finding under subsection E is supported. *Id.; see also In re M.R.,* 243 S.W.3d 807, 819 (Tex. App. Fort—Worth 2007, no pet.) (recognizing continued criminal conduct and repeated incarceration may be part of a continuing course of conduct that is endangering under subsection E).

The Mother admitted at trial that she frequently left the Children in the care of others while she used drugs and while she was incarcerated. She acknowledged that she was "not there" for the Children. During one of these periods when the Mother's actions caused the Children to live with a relative, the Mother acknowledged that it was alleged that her Husband had sexually assaulted Tonya. It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being. *In re R.W*., 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied). The Mother said the incident occurred when the Children were living with their grandmother, who permitted them to visit her Husband's mother. The Mother testified that she had separated from her Husband in 1999 and she would not have allowed her Husband to be around the Children. She said if she saw her Husband, she would call the police because she wanted him brought to justice for what he did to her daughter.

### c. *Instability and Neglect*

Endangerment to a child's well-being may be inferred from parental misconduct, including conduct that subjects the child to a life of uncertainty and instability. *Boyd*, 727 S.W.2d at 533; *In re S.M.*, 389 S.W.3d at 492. The Mother acknowledged that she left the Children with relatives or babysitters while she used drugs. She also left the Children with her mother when she was incarcerated. The Mother also stated that she had been treated for her drug addiction three times and the trial court could infer that she was absent from the Children's lives while in treatment. The Children's older half-sister, Jasmine, testified that Tonya told her she did not feel safe with her Mother and the Children often got hurt when they were with her.

In addition to her drug use, criminal history, and unstable lifestyle, the Mother demonstrated her neglect in caring for the Children by allowing her then six-year-old son to wander the apartment complex alone. Neglect "can be as dangerous to the well-being of a child as direct physical abuse." *In re M.C.*, 917 S.W.2d at 270. A parent's failure to adequately protect or supervise young children supports a finding of endangerment. *In re M.D.V.*, No. 14-04-00463-CV, 2005 WL 2787006, at *5 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (mem. op.). The Mother acknowledged that the Department became involved with her Children after her son Troy was found walking around the complex by himself. In addition, neighbors were alarmed when Troy claimed to be hungry and they feared the Mother was starving the Children. The Mother denied these allegations. She explained that she lacked transportation to take Troy to school after he was suspended from riding the bus. She claimed that Troy left the apartment without her knowledge while she slept.

In sum, the Mother's drug use, criminal history including incarceration, unstable lifestyle, and neglect of her Children support the trial court's finding of

endangerment under subsection E. *See* Tex. Fam. Code Ann. § 161.001(1)(E). Therefore, we overrule the Mother's first issue.

Having determined that the evidence is sufficient to support the trial court's finding on the statutory ground in subsection E, we need not consider whether the evidence would support subsection O, the other predicate ground for termination challenged in the Mother's second issue. *See In re A.V.*, 113 S.W.3d at 362 (affirming termination decree based on one predicate without reaching second predicate found by the trier of fact and challenged by the parent).

## C. Best-Interest Finding Under Section 161.001(2)

In her third issue, the Mother asserts the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the Children's best interest. The primary focus of parental-rights termination proceedings is protecting the best interest of the Children. *In re A.V.*, 113 S.W.3d at 362. We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans

for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The Department need not provide evidence relating to all of the *Holley* factors to support termination, and the absence of some factors does not bar the factfinder from finding that termination is in the Children's best interest. *In re C.H.*, 89 S.W.3d at 27.

### 1. *Present and Future Physical and Emotional Danger to the Children*

We begin our analysis by noting that evidence supporting termination under one of the grounds listed in section 161.001(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(1) grounds and best interest). Evidence of endangerment supports the trial court's finding that termination is in the best interest of the child. *In re U.P.*, 105 S.W.3d 222, 231 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). It is therefore appropriate to consider at the outset the evidence recited above relevant to endangerment.

The Mother admitted to a sixteen to seventeen-year history of drug use, including three failed attempts at rehabilitation. She acknowledged her numerous positive drug tests, including those after the Children were removed from her care. She also acknowledged that the Department expressed concern because of her history of drug use and the potential to endanger the Children. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re*

*J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of a child).

In addition, the Mother has a criminal history involving illegal drugs and engaging in prostitution. The Mother had not provided a stable environment for her Children. She frequently left them with relatives when she was in jail or using drugs. Her lack of supervision may have contributed to the sexual assault of her daughter.

Department supervisor Hatley testified at trial that she believed it would be in the Children's best interest to terminate the Mother's parental rights based on her admission of drug use for many years. The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d at 502.

James, who referred to himself as the Mother's "close friend," testified that he was committed to helping the Mother stay sober. James testified he had motivated the Mother to get into drug treatment. He did not think termination of the Mother's parental rights would be in the Children's best interest. He testified that the Mother is on "the right path to get it together."

While the Mother completed inpatient substance abuse treatment, she had only been released from treatment for three months at the time of trial. She admitted that she had relapsed after drug treatment three times in the past. The factfinder may determine that a parent's changes shortly before trial are too late to have an impact on the best-interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied). In addition, although the Mother claimed that this time would be different from her previous relapses, the trial court,

17

as the fact finder, evaluated the Mother's credibility. We may not disturb the trial court's credibility determination, a matter solely within the fact finder's province. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

The evidence related to the physical and emotional danger to the Children supports the trial court's best-interest finding.

### 2. *Stability of the Parent's Lifestyle*

A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized as the paramount consideration in a best-interest determination. *See In re K.C.*, 219 S.W.3d at 931. Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, 444 S.W.3d 46, 59–60 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that a parent's failure to provide a stable home and provide for a child's needs contributes to a finding that termination of parental rights is in the child's best interest). A parent who lacks stability, income, or a home is unable to provide a child's physical and emotional needs. *See In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet) (evidence sufficient to support best interest finding when mother admitted inability to care for child and no stable source of income or stable home).

The Mother had not provided a stable environment for her Children. She frequently left them with relatives when she was in jail, using drugs, or in drug treatment. There also is no evidence in our record about where the Children were

when the Mother engaged in prostitution. The Mother acknowledged that she was dependent on her boyfriend James for financial support. The Mother first called James her "spouse," then called him her "boyfriend," and said they had been dating for about a year. She testified James does not live with her. At the time of trial, the Mother had only part-time employment. With the financial support from James and the Children's benefits as a result of their father's death, she testified she would be able to support the Children.

There is no evidence in the record regarding whether the Mother had maintained a stable residence for any extended period of time. The Mother testified that she had her own apartment and it is appropriate for the Children, claiming that it is "safe" and "stable." She had only been released from drug treatment for three months, however, and the record does not reflect when the Mother obtained the apartment. In addition, there is no other evidence about the suitability of the Mother's living arrangements.

### 3. Compliance with Family Service Plan

It was also appropriate for the trial court to evaluate whether the Mother completed her court-ordered service plan for reunification with the Child in reaching its best-interest determination. *See In re E.C.R.*, 402 S.W.3d at 249 (stating findings under subsection O can support the best interest finding). The Mother acknowledged receiving the plan and signing the service plan at the beginning of the case. She stated she had successfully completed her family service plan. While she was aware of the services that were required, the Mother did not enter treatment for her drug dependency until this case had been on file more than seven months. The Mother provided a certificate stating she entered treatment on April 28, 2014, and successfully completed Intensive Residential Treatment at ADA Women's Center on June 26, 2014. She testified she was currently enrolled in outpatient treatment. There was no evidence that the Mother complied with the

recommendation that she undergo family counselling to improve her parenting skills. The Mother admitted she was aware the plan required that she not use illegal drugs. Contradicting her testimony that she had complied with her service plan, the Mother acknowledged that she knew her continued drug use would cause the Children to stay in the Department's care and could result in termination of her parental rights, but she had done it anyway.

The record reflects that the Mother had limited visitation with the Children during the year and a half that they had been removed from her home. The Mother testified she had attended all the visits with the Children that the Department permitted, and that the Children want to live with her. She described the sadness she and the Children experienced when the visits ended.

The record evidence relating to the Mother's employment history is limited and of short duration. When she was first released from drug rehabilitation therapy, the Mother worked at Popeye's, then she got a better job working part-time at Fiesta. The Mother's pay stubs were admitted in evidence. While working at Popeye's, the Mother earned $7.25 per hour and worked 23.8 hours the week of July 14, 2014, for a net payment of $144.35. She also provided records showing she was paid $173.28 the week of July 28, 2014. The records show the Mother only worked 8.73 hours at Popeye's during the last pay period ending August 24, 2014. The Mother's earning statement for her September 4, 2014, paycheck from Fiesta showed that the Mother earned $7.50 per hour and she worked 15.3 hours, with a net payment of $105.98 for a one-week period. She said the job has the potential to become full time with benefits. The Mother testified that she loved her job and was doing well.

The Mother testified she had obtained a job at Popeye's after her release from drug treatment three months before trial and she worked at Popeye's for about five weeks. Therefore, at most, the Mother was employed at Fiesta for less

than two months at the time of trial. The payment record from Fiesta that the Mother provided only covered one week at the end of August, one month before trial. The record reflects the Mother worked fewer hours at Fiesta, earning less than she had at Popeye's. Our record contains no other evidence related to the Mother's employment history. There is no evidence regarding whether the Mother had previously maintained stable employment or earned sufficient income to support her Children.

The Mother testified she also receives financial support from her boyfriend, James, whom she had been dating for over a year. She was still legally married, but she claimed she had not seen her Husband since 1999. He is not the Children's father. The Mother testified James provides about 75% of her financial support. She testified the Children receive social security benefits due to the death of their father. She would be able to support the Children with the addition of the death benefits. She said it would not be in their best interest to lose their Mother after they already lost their father.

The Mother asserted she loves her Children. She provided photographs showing her visiting the Children who smiled and hugged her. When considering the best interest of a child, "[s]ometimes, love is not enough," however. *J.D.S. v. Tex. Dep't of Family Protective Servs.*, No. 08-14-00191-CV, 2014 WL 4745794, at *10 (Tex. App.—El Paso Sept. 24, 2014, no pet.) (mem. op.); *see also In re M.D.V.*, No. 14-04-00463-CV, 2005 WL 2787006, at *7 ("Although appellant emphasizes that she is a loving parent and has not committed any overt acts of physical abuse, her purported concern is outweighed by the emotional and physical danger to the children caused by her drug use and failure to supervise them.").

While the Mother had demonstrated some progress in addressing her drug dependency, the fact finder may have determined that the Mother's efforts were too late to overcome years of drug use and neglect so as to have an impact on the

21

best-interest determination. *See In re Z.C.*, 280 S.W.3d at 476. Stability and permanence are paramount in the upbringing of children. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). A parent's failure to show that she is stable enough to parent a child for any prolonged period entitles the trial court "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). We conclude the evidence related to the Mother's lack of stability supports the trial court's best-interest finding.

### 4. Children's Desires, Needs, and Proposed Placement

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the Children's best interest. *See J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Therefore, evidence about the present and future placement of the Children is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28. Plans for adoption are relevant, but evidence about definitive plans are not required to find termination or parental rights is in the Child's best interest. *Id.*

The Children's older sister, Jasmine, who was twenty-one years old, testified the Children had been with her for a month and were doing well. Jasmine has a job and is able to support the Children. They had been in the same foster home before coming to live with her. Troy was doing better in school and controlling his ADHD with medication. Tonya followed her around and said living with her was "like a dream," and if she could not live with her Mother, she would live with her sister instead of in a foster home. Jasmine testified that the Children told her they would rather live with her than with their Mother. Tonya told Jasmine she did not feel safe with her Mother and the Children got hurt too many times when they were

22

with her. One of the Mother's boyfriends use to spank Troy and the Mother did nothing about it. Jasmine testified that she had been around the Children since they were born. Jasmine acknowledged the Children love their Mother and want to continue a relationship with her. Jasmine insisted she would be protective of the Children if their Mother relapsed into drug use. Jasmine testified she wants to adopt the Children and her adoption would be in their best interest. Jasmine testified that she had been deprived of a childhood because of her mother's drug use and she wanted to provide the Children with a better future that provides stability. Despite her youth, Jasmine believed she could provide a safe and stable home for the Children. The Mother acknowledged she had seen the Children and they were happy and thriving with Jasmine. The Mother also acknowledged she was comfortable with the Children's placement with Jasmine. The Mother testified, however, that the Children told her that they wanted to live with her.

The Advocate testified that termination of the Mother's parental rights and the current placement of the Children with Jasmine is in the Children's best interest. The Advocate testified that the Children had told her they wanted to stay with their sister, Jasmine. The Advocate also acknowledged the Children love their Mother and want to continue to have a relationship with her.

Despite the love the Children and Mother have for each other, these factors weigh in favor of termination.

### 5. *The Mother's Parenting Abilities*

We may also consider a parent's past performance as a parent in evaluating the parent's fitness to provide for the Child and the trial court's determination that termination would be in the Child's best interest. *See In re C.H.*, 89 S.W.3d at 28. The Mother acknowledged she had an older son who is thirteen years old and lives

with her mother.[3] The Mother provided no explanation why her mother is raising this older child. There is no evidence regarding any bond with that child or the Mother's efforts to parent that child. In addition, there is no evidence regarding whether she supported that child financially.

Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.,* No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.). The Mother was neglectful in allowing Troy to wander the apartment complex by himself. The Mother testified that the Department became involved with her Children in September 2013 when her six-year old son was found walking around the apartment complex by himself. Troy claimed he was hungry, alarming the neighbors to the extent they contacted the Department out of concern that the Mother was starving the Children. The Mother was in and out of jail or drug rehabilitation during the Children's short lives, often leaving them with relatives.

The Mother provided a psychosocial evaluation from Kinghaven Counseling Group completed a month before trial. The evaluation admitted at trial included a recommendation that the Mother have increased contact with the Children. The Kinghaven report recommended that the Mother undergo "family therapy with the goal of improving her parenting skills with her children." Our record contains no evidence that the Mother engaged in the recommended family therapy.

The limited evidence addressing the Mother's ability to parent her Children supports the trial court's best-interest finding.

---

[3] The Mother did not mention Jasmine in her testimony regarding her Children. It appears from the record that Jasmine is the Mother's step-daughter.

24

### 6. Summary

The record evidence established that the Mother has a long history of abusing illegal drugs. She acknowledged she often left her Children with others and she was "not there" for them. In addition, the Mother had numerous criminal convictions, including drug offenses, and she had been incarcerated at least once. She is dependent on her boyfriend James for financial support. In fact, the only evidence of family or other support to assist her is from James, who denied he was the Mother's boyfriend and called himself a "close friend." While the Mother completed in-patient drug treatment, she admitted that she had relapsed three times in the past. While there is evidence that the Mother loves the Children and they miss her, her daughter Tonya did not feel safe with her Mother. In contrast, the Children were safe, stable, and doing well in the current placement. Tonya said living with Jasmine was "like a dream."

After considering the relevant factors under the appropriate standards of review, we conclude this evidence supports the trial court's best-interest finding. *See In re S.B.*, 207 S.W.3d at 887–88 (considering the parent's drug use, inability to provide a stable home, and failure to comply with his family service plan in holding evidence supported the best-interest finding). Specifically, after viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights is in the Children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. And, in light of the entire record, we further conclude that any "disputed evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction" that termination of the Mother's parental rights is in the Children's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. Therefore, we hold the evidence is both legally and factually sufficient to support the trial

court's finding that termination of the parent-child relationship is in the Children's best interest. *See* Tex. Fam. Code § 161.001(2). We overrule the Mother's third issue.

## IV. CONCLUSION

We have determined that legally and factually sufficient evidence supports the trial court's finding of at least one predicate ground for termination and that termination of the Mother's parental rights is in the best interest of the Children. Therefore, the trial court's judgment is affirmed.


/s/    Marc W. Brown
Justice


Panel consists of Justices Jamison, Busby, and Brown.