Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

CHRISTOPHER ASJES,
)
 No. 08-03-00062-CV

)


 Appellant,
)
 Appeal from

)
 

v.
)
 65th District Court

)


TEXAS DEPARTMENT OF PROTECTIVE
)
 of El Paso County, Texas

AND REGULATORY SERVICES,
)


)
 (TC# 2001CM6338)

 Appellee.
)



O P I N I O N



 Christopher Asjes appeals from a judgment terminating the parent-child relationship between 
he and his son, M.A. In a single issue for review, he challenges the sufficiency of the evidence
supporting the judgment. Because we find the evidence both legally and factually sufficient, we
affirm.

FACTUAL SUMMARY


 Christopher and Virginia Teague were married when M.A. was born on September 11, 1993. 
Virginia had a long history of substance abuse and was addicted to cocaine at the time of the birth.
Indeed, the baby had cocaine in his system when he was born. (1) Christopher was incarcerated in a
Texas prison sometime in 1993 and paroled in 1995 to a halfway house in Socorro, New Mexico. 
Despite his release from prison, Christopher still had no contact with his son. Christopher and
Virginia divorced in 1998 or 1999. The decree appointed Virginia as the managing conservator,
established Christopher's visitation rights, and ordered him to pay child support. 

 In 1995 or 1996, only six months after his release from a Texas prison, Christopher was
arrested for possession of a firearm in New Mexico. He served two and one-half years and was
released on parole in 1998. During his father's incarceration, M.A. lived with Virginia and her
husband, Jack Hayes, both of whom have severe drug addictions. Christopher knew of their drug
abuse because he had done drugs with them. As a result, M.A. has lived in an environment where
his physical and emotional needs have been neglected. In 1998, approximately one month after his
release from prison, Christopher discovered that Virginia had left M.A. with a friend in Chaparral,
New Mexico. Christopher picked up the child and M.A. lived with Christopher and his girlfriend,
Sandra Logsdon, (2) for the next six months. Yet despite his knowledge of the prior neglect and
Virginia's drug use, Christopher left M.A. with Virginia every weekend. One weekend when
Christopher went to pick up the child, Virginia and the boy had disappeared. Christopher lost
contact with them for the next two weeks, but he ultimately obtained her telephone number in the
Dallas/Fort Worth area when she called him. Christopher and Virginia spoke regularly on the
telephone but there is no evidence that he talked with his son and he made no trips to Dallas/Fort
Worth to visit him. Instead, Christopher asked Virginia to let him know when they were going to
visit the Chaparral area so that he could see M.A. By the time Virginia and M.A. came to Chaparral
for a visit in mid-1999, Christopher had been incarcerated in New Mexico for a theft offense and a
parole violation arising out of his 1998 conviction for possession of a firearm. Christopher was
sentenced to serve nine years in connection with the parole violation and theft offense, but Logsdon
expected him to be released in either April of 2003 or March of 2004. Other than a few letters
written to M.A. after October 2001, Christopher has had no contact with his son since 1999. 

 The Department began its involvement with M.A. and his parents in April of 2001 upon
receiving a report that M.A. and his younger brother were being neglected by Virginia and her
husband, Jack Hayes. In September of 2001, DPRS removed M.A. from the home due to continued
drug usage on the part of both Virginia and Hayes (cocaine and amphetamines) and their failure to
participate in court-ordered services. It also filed a petition against Christopher and Virginia seeking
protection of M.A., conservatorship, and termination of parental rights. (3) On October 5, 2001, the
trial court appointed the Department as temporary managing conservator. M.A. remained in foster
care until January 16, 2002 when he was returned to Virginia. However, in March of 2002, Virginia
advised the caseworker that she could not pay the rent because Hayes was in jail and she had
received an eviction notice from her landlord. Following their eviction, Virginia and the children
resided at the Salvation Army shelter. That same month, the children were again removed from
Virginia based on reports that Virginia had resumed drinking, she had not stabilized the family's
living situation, M.A. had excessive absences at school, and he had been going to school hungry. 
For the next several months, Virginia did not comply with the family service plan or make any effort
to correct the problems which had caused the children to be removed from the home. As one
example, Virginia and Hayes, who had been released from jail, continued to use crack cocaine and
crystal methamphetamine. Because of his incarceration, Christopher was not able to protect M.A.
or provide him with a safe environment.

 In June 2002, Virginia and Hayes began living in the home of a friend, Elizabeth Tsosie. The
three of them drank daily and often used crack cocaine and methamphetamine. According to Tsosie,
Virginia commonly began drinking each morning at 7. Tsosie left her home in mid-July to attend
a drug treatment program in Refugio, Texas. She gave Virginia and Hayes permission to stay in her
home for up to thirty days during her absence. Virginia falsely represented to DPRS that they were
renting the home from Tsosie, but when Tsosie discovered that they were selling all of her
possessions and moving their own possessions into her home, she had the utilities turned off and
demanded that they leave. Thereafter, Virginia and Hayes lived in a car on property where crystal
methamphetamine was being manufactured. 

 The bench trial began on September 11, 2002, and adjourned January 10, 2003 when it was
discovered that both M.A. and the younger child, J.H., were born prior to the divorce of Virginia and
Christopher but the divorce decree only included the older child. Because Christopher was the
presumed father of Virginia's younger son, the trial court continued the case in order for paternity
testing to be performed. The test results showed that Christopher was not J.H.'s biological father. 
At the conclusion of the final hearing, the trial court terminated the parental rights of both
Christopher and Virginia. 

SUFFICIENCY OF THE EVIDENCE


 In his sole issue on appeal, Christopher contends that the evidence is legally and factually
insufficient to support the trial court's determination that the Department proved the termination
grounds by clear and convincing evidence.


Termination under Section 161.001


 In proceedings to terminate the parent-child relationship brought under Section 161.001 of
the Family Code, the petitioner must establish by clear and convincing evidence one or more of the
acts or omissions enumerated under subsection (1) of the statute and must also prove that termination
is in the best interest of the child. Tex.Fam.Code Ann. § 161.001 (Vernon 2002); Richardson v.
Green, 677 S.W.2d 497, 499 (Tex. 1984). Both elements must be established; termination may not
be based solely on the best interest of the child as determined by the trier of fact. Texas Department
of Human Services. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

Standards of Review


 Due process requires the application of the clear and convincing evidence standard in cases
involving the termination of parental rights. In the Interest of J.F.C., A.B.C., and M.B.C., 96 S.W.3d

256, 263 (Tex. 2002), citing Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599
(1982). Codifying the constitutional requirement, the Texas Family Code provides that the burden
of proof in termination cases is clear and convincing evidence. Tex.Fam.Code Ann. § 161.001(1),
(2). The Family Code defines clear and convincing evidence to mean the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established. Tex.Fam.Code Ann. § 101.007 (Vernon 2002). This
intermediate standard falls between preponderance of the evidence of ordinary civil proceedings and
the reasonable doubt standard utilized in criminal proceedings. State v. Addington, 588 S.W.2d 569,
570 (Tex. 1979). While the proof must be more than merely the greater weight of the credible
evidence, there is no requirement that the evidence be unequivocal or undisputed. Id.

 Given this elevated burden of proof, the traditional legal and factual sufficiency standards
of review are inadequate. J.F.C., 96 S.W.3d at 265; In the Interest of C.H., 89 S.W.3d 17, 25 (Tex.
2002). Our legal and factual sufficiency review must take into consideration whether the evidence
is such that a factfinder could reasonably form a firm belief or conviction about the truth of the
matter on which the adverse party bears the burden of proof. J.F.C., 96 S.W.3d at 265-66; C.H., 89
S.W.3d at 25. In a legal sufficiency review, we consider the evidence in the light most favorable to
the challenged finding to determine whether a reasonable trier of fact could have formed a firm belief
or conviction that the finding is true. J.F.C., 96 S.W.3d at 266. In determining whether the evidence
is factually sufficient, we make the same inquiry, but consider all of the evidence without viewing
it in the light most favorable to the challenged finding. See J.F.C., 96 S.W.3d at 266 (explaining that
distinction between legal and factual sufficiency review in termination cases arises from how the
evidence is viewed). Under either standard, our review must maintain the respective constitutional
roles of juries and appellate courts. C.H., 89 S.W.3d at 26.

The Findings


 The trial court found that termination was in the best interest of M.A., and that the
Department had proven the following grounds for termination by clear and convincing evidence:

  Christopher had knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being of
the child;


  Christopher had engaged in conduct or knowingly placed the child with persons
who engaged in conduct which endangers the physical or emotional well-being of the
child; and


  Christopher had constructively abandoned the child who has been in the permanent
or temporary managing conservatorship of the Department of Protective and
Regulatory Services or an authorized agency for not less than six months and: (i) the
Department or authorized agency has made reasonable efforts to return the child to
the father; (ii) the father has not regularly visited or maintained significant contact
with the child; and (iii) the father has demonstrated an inability to provide the child
with a safe environment.


See Tex.Fam.Code Ann. § 161.001(1)(D), (E), (N). (4)

 Christopher does not challenge the trial court's finding that termination is in the best interest
of the child. Therefore, if the evidence supports any one of the Section 161.001(1) findings, the
judgment of the trial court must be upheld. See In the Interest of S.F., 32 S.W.3d 318, 320
(Tex.App.--San Antonio 2000, no pet.).

Sections 161.001(1)(D) and (E)


 We first review the evidence supporting the trial court's findings that Christopher had
knowingly placed or knowingly allowed M.A. to remain in conditions or surroundings which
endanger the physical or emotional well-being of the child and that he engaged in conduct or
knowingly placed M.A. with persons who engaged in conduct that endangered M.A.'s physical or
emotional well-being. See Tex.Fam.Code Ann. § 161.001(1)(D), (E). 

 Both subsections (D) and (E) require proof of endangerment, which means to expose to loss
or injury, or to jeopardize a child's emotional or physical health. Boyd, 727 S.W.2d at 533; Doyle
v. Texas Department of Protective and Regulatory Services, 16 S.W.3d 390, 394 (Tex.App.--El Paso
2000, pet. denied). While endanger means more than a threat of metaphysical injury or the possible
ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at
the child or that the child actually suffer injury. Doyle, 16 S.W.3d at 394. Subsections (D) and (E)
differ in one respect: the source of the physical or emotional endangerment to the child. See In the
Interest of B.S.T., 977 S.W.2d 481, 484 (Tex.App.--Houston [14th Dist.] 1998, no pet.); In the
Interest of S.H.A., 728 S.W.2d 73, 83-84 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). Subsection (D)
requires a showing that the environment in which the child is placed endangered the child's physical
or emotional health. Doyle, 16 S.W.3d at 394. This provision addresses the child's surroundings
and environment rather than parental misconduct, which is the subject of subsection (E). Id.; B.S.T.,
977 S.W.2d at 484; S.H.A., 728 S.W.2d at 84. Under subsection (E), the cause of the danger to the
child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by
the parent's omission or failure to act. Doyle, 16 S.W.3d at 395; B.S.T., 977 S.W.2d at 484; S.H.A.,
728 S.W.2d at 83-84.

Environmental Endangerment


 Conduct of a parent or another person in the home can create an environment that endangers
the physical and emotional well-being of a child as required for termination under subsection (D). 
In the Interest of W.S., 899 S.W.2d 772, 776 (Tex.App.--Fort Worth 1995, no writ); D.O. v. Texas
Department of Human Services, 851 S.W.2d 351, 354-55 (Tex.App.--Austin 1993, no writ); In the
Matter of B.R., 822 S.W.2d 103, 105-06 (Tex.App.--Tyler 1991, writ denied). For example, an
environment which routinely subjects a child to the probability that he will be left alone because his
parents or caregivers are incarcerated endangers both the physical and emotional well-being of a
child. See In the Interest of S.D., 980 S.W.2d 758, 763 (Tex.App.--San Antonio 1998, pet.
denied)(parents repeatedly jailed due to illegal drug use and drug-related criminal activity).

Endangerment by Parental Act or Omission


 Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment
of the child's physical and emotional well-being was the result of the parent's conduct, including acts
and omissions or failures to act. In the Interest of R.D., 955 S.W.2d 364, 368 (Tex.App.--San
Antonio 1997, pet. denied); Dupree v. Texas Department of Protective & Regulatory Services, 907
S.W.2d 81, 83-84 (Tex.App.--Dallas 1995, no writ). The conduct to be examined includes what the
parents did both before and after the child was born. In the Interest of D.M., 58 S.W.3d 801, 812
(Tex.App.--Fort Worth 2001, no pet.); Dupree, 907 S.W.2d at 84. To be relevant, the conduct does
not have to have been directed at the child, nor must actual harm result to the child from the conduct. 
Dupree, 907 S.W.2d at 84; In re C.D., 664 S.W.2d 851, 853 (Tex.App.--Fort Worth 1984, no writ). 
Additionally, termination under subsection (E) must be based on more than a single act or omission;
a voluntary, deliberate, and conscious course of conduct by the parent is required. Tex.Fam.Code
Ann. § 161.001(1)(E); In the Interest of K.M.M., 993 S.W.2d 225, 228 (Tex.App.--Eastland 1999,
no pet.). However, it is not necessary that the parent's conduct be directed at the child or that the
child actually suffer injury. Boyd, 727 S.W.2d at 533. The specific danger to the child's well-being
need not be established as an independent proposition, but may be inferred from parental
misconduct. In the Interest of N.K., 99 S.W.3d 295, 300 (Tex.App.--Texarkana 2003, no pet.).

 A mother's use of drugs during pregnancy may amount to conduct that endangers the
physical and emotional well-being of the child. In re K.M.B., 91 S.W.3d 18, 25 (Tex.App.--Fort
Worth 2002, no pet.). Drug addiction and its effect on a parent's life and ability to parent may
establish an endangering course of conduct as well. Dupree, 907 S.W.2d at 84. While a parent's
incarceration, standing alone, will not prove endangerment under subsection (E), it is a factor for
consideration by the trial court on the issue of endangerment. Boyd, 727 S.W.2d at 533-34; In re
M.D.S., 1 S.W.3d 190, 199 (Tex.App.--Amarillo 1999, no pet.). If the evidence, including the
imprisonment, shows a course of conduct which has the effect of endangering the physical or
emotional well-being of the child, a finding under subsection (E) is supportable. Boyd, 727 S.W.2d
at 534 (citing to prior version of the statute); M.D.S., 1 S.W.3d at 199.

The Evidence


 We will review the evidence pertaining to subsections (D) and (E) together because it is
tightly interwoven. Taken in the light most favorable to the findings, the evidence showed that
Virginia, through the use of cocaine during her pregnancy, endangered M.A.'s physical well-being
before he was even born. Virginia continued to abuse drugs and lived with others, including her
husband Jack Hayes, who also abused drugs throughout the time M.A. lived with her. This
"lifestyle" created an unstable environment in which M.A.'s physical and emotional needs were
neglected. Due to his incarceration in a Texas prison and then in a New Mexico prison, Christopher
had no contact with M.A. for the first five years of his life. By no later than 1998, Christopher had
knowledge of Virginia's drug abuse and knew that M.A.'s needs were being neglected by Virginia. 
To his credit, Christopher took M.A. into his home for approximately six months and treated him
well. However, Christopher did not make any effort to find Virginia and M.A. after she disappeared
with him nor did he seek custody of his son. Likewise, Christopher did not attempt to visit with
M.A. or maintain any contact with him after he had re-established contact with Virginia. As a result
of drug abuse by Virginia and Hayes, M.A.'s living conditions have been unstable throughout most
of his life; his physical and emotional needs have been consistently neglected to his detriment. At
the time of trial, Christopher had been imprisoned in New Mexico since 1999 and he was not
expected to be released until early 2003 or 2004. The Department had to remove M.A. from
Virginia's custody in 2001 due to neglect.

 The summarized evidence is legally sufficient for a reasonable trier of fact to form a firm
belief or conviction that Christopher had knowingly placed or knowingly allowed M.A. to remain
in conditions or surroundings which endangered his physical or emotional well-being, and that
Christopher had engaged in conduct or had knowingly placed M.A. with persons who engaged in
conduct that endangered M.A.'s physical or emotional well-being. Christopher' voluntary criminal
behavior and resulting imprisonment has rendered him unable to provide a safe environment for
M.A. or to protect M.A. from neglect at the hands of Virginia and Hayes. Even when out of prison,
Christopher has done little to protect M.A. from neglectful treatment by Virginia and Hayes.

 Turning to the issue of factual sufficiency, we have reviewed all of the evidence but have not
considered it in the light most favorable to the findings. The Department did not present
overwhelming evidence of M.A.'s living conditions but the record does show that M.A. was not
attending school regularly and he often went to school unfed and dirty. Due to their drug addictions,
Virginia and Hayes were generally unemployed and did not provide a stable home environment for
the children. They obtained finances for the family by pawning or selling items, some of which did
not belong to them. Christopher knew that Virginia and Hayes were abusing drugs as he had done
drugs with them and he also knew that M.A. had been neglected to the point that he had taken M.A.
into his own home. Even so, Christopher knowingly allowed M.A. to remain with Virginia and he
made little or no effort to maintain contact with his son. As a result of his repeated incarceration
since M.A.'s birth, Christopher has been unable to provide M.A. with a safe environment or protect
him from neglect. Consequently, we conclude that the evidence is factually sufficient for a
reasonable trier of fact to form a firm belief or conviction that Christopher knowingly placed or
knowingly allowed M.A. to remain in conditions or surroundings which endangered his physical or
emotional well-being. Likewise, the evidence is also factually sufficient to support the finding that
Christopher had engaged in conduct or had knowingly placed M.A. with persons who engaged in
conduct that endangered M.A.'s physical or emotional well-being. We overrule the sole issue on
appeal and affirm the judgment of the trial court.



April 15, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.
1. Virginia's other child also tested positive for cocaine at the time of his birth. 
2. At the time of trial, Christopher and Logsdon were engaged and planned to marry upon Christopher's release
from a New Mexico prison. 
3. The petition also sought to terminate the parental rights of Virginia and Hayes with respect to M.A.'s younger
brother. 
4. The Department also sought termination under Section 161.001 based on allegations that Christopher had
knowingly engaged in criminal conduct that results in the parent's imprisonment and inability to care for the child for
not less than two years from the date of filing the petition; and that Christopher had failed to comply with the provisions
of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has
been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services
for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect
of the child. See Tex.Fam.Code Ann. § 161.001(1)(O), (Q). The trial court did not sustain either of these allegations.