

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00236-CV

IN THE INTEREST OF K.L., A CHILD

On Appeal from the County Court at Law No. 2
Potter County, Texas
Trial Court No. 87,201-2, Honorable Pamela Cook Sirmon, Presiding

November 4, 2016

MEMORANDUM OPINION

Before QUINN, CJ., and CAMPBELL and PIRTLE, JJ.

The mother of K.L.[1] appeals the trial court's order terminating her parental rights.[2] We will affirm the order of the trial court.

Background

---

[1] To protect the child's privacy, we will refer to the parents as "the mother" and "the father" and the child by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8(b).

[2] The parental rights of K.L.'s father also were terminated in this proceeding. The father has not appealed.

At the time of the final hearing in May 2016, the mother was 38 years old. She testified at the hearing she began using methamphetamine when she was a teenager and that she and the father of K.L. used the drug together for a period of years. The father did not appear for the final hearing.

The mother tested positive for methamphetamine three times during her pregnancy with K.L. In June 2015, following K.L.'s birth, the Texas Department of Family and Protective Services filed pleadings that included a petition against the mother seeking removal of K.L. from her care. The petition alleged several grounds and requested emergency removal of K.L. The court granted that relief and named the Department temporary sole managing conservator of the child. K.L. was removed from the mother's care at the hospital. He was placed in a foster home with two of his siblings and remained there at the time of the final hearing.

The trial court's termination order found, among other grounds, the mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered his physical or emotional well-being and that termination of the mother's parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(E); 161.001(b)(2) (West 2016). The mother appealed.

Analysis

Standard of Review in Termination Cases

The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith,* 685 S.W.2d 18, 20

2

(Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(b)(1) and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Thus a termination order may be affirmed if it is supported by legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

The mother's appellate issues challenge the legal and factual sufficiency of the evidence supporting the court's termination order. Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). But prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best

4

interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). The best interest analysis evaluates the best interest of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). The following factors are among those the court may consider in determining the best interest of the child: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

Ground for Termination—Section 161.001(b)(1)(E)

Parental rights may be terminated under paragraph (E) of section 161.001(b)(1) if there is clear and convincing evidence the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The cause of the danger to the child may be proven by the parent's actions as well as by omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E) requires more than a single act or omission; a voluntary, deliberate and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). Endanger means to expose to loss or injury; to jeopardize. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996)

5

(*citing Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d at 269.

Proof of Endangering Conduct by the Mother[3]

The appellate record reflects the mother's long and significant history of methamphetamine use, beginning when she was a teenager. The Department investigator and caseworker testified the mother reported that history to both of them. The caseworker testified both the mother and father reported to her they used methamphetamine throughout their relationship and during the mother's pregnancy with K.L. The Department investigator testified the mother told her she used methamphetamine "multiple times" during her pregnancy.

The couple had a total of seven children. Three of the couple's seven children tested positive for methamphetamine at birth and the caseworker told the court none of the children reside with the couple. The mother testified the children were removed from the couple's care as a result of their drug use and said "[a]ll of them probably" tested positive for methamphetamine. The mother tested positive for the drug every time she was tested during the pendency of the Department's case concerning K.L. Three of those positive tests were during her pregnancy with K.L. and three were after

_____

[3] Although the termination of the father's parental rights are not at issue in this appeal, it is worth reiterating the father had a long and significant history of methamphetamine use and used methamphetamine with the mother while both knew the mother was pregnant with K.L.

6

K.L.'s removal. This evidence supports the trial court's finding the mother endangered the physical or emotional welfare of K.L. *See In the Interest of S.H.,* No. 07-15-00177-CV, 2015 Tex. App. LEXIS 9731, at *5 (Tex. App.—Amarillo Sept. 16, 2015, no pet.) (mem. op.) (illegal drug use may support termination under subsection 161.001(b)(1)(E)); *In re M.L.B.,* 269 S.W.3d 757, 760 (Tex. App.—Beaumont 2008, no pet.) (*citing Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ) (illegal drug use during pregnancy supports a finding the mother has engaged in conduct that endangers the physical and emotional welfare of the child).

The mother candidly admitted she did not complete her drug treatment, testifying "I just quit going. I have no excuses for that. I just quit going." She did testify she attended AA meetings "every now and then" but she did not provide proof of her attendance. While she told the court she was "clean" by the time of the final hearing,[4] she admitted she "did choose drugs over my kids." The caseworker testified both the mother and father completed drug treatment in connection with a Department investigation concerning their other children but that both parents relapsed. The mother also admitted she had participated in inpatient drug treatment in the past but relapsed. This pattern of behavior supports the trial court's finding the mother's course of conduct endangered the physical or emotional well-being of K.L. *Asjes v. Tex. Dep't of Protective & Regulatory Servs.,* 142 S.W.3d 363, 370 (Tex. App.—El Paso 2004, no pet.) (drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct).

---

[4] The mother testified, "I've been clean and sober for -- I don't even know how long. It's -- I don't keep track of the days."

The record also shows that at the time of the final hearing, the mother was on deferred adjudication community supervision for "harboring a runaway" and an active warrant had been issued for her arrest. She violated the terms of her community supervision through using methamphetamine and failing to complete drug treatment. The mother's community supervision officer testified that the mother admitted to her that she used methamphetamine in September 2015, twelve days after being placed on community supervision. The officer said the mother faced a pending revocation and possible prison sentence as a result of her violations. *See In re V.V.,* 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child) (citations omitted). *See also Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination under subsection 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned").

The evidence at the final hearing told the court the mother had a serious drug addiction and had a long history of relapses following treatment for that addiction. Based on all of the evidence presented to the trial court, we conclude that the court could readily have reached the necessary firm conviction or belief the mother engaged in a course of conduct that endangered K.L.'s physical or emotional well-being.

Proof of Best Interest

The mother also challenges the trial court's finding that termination of her parental rights to K.L. was in the child's best interest. She told the court, "I want this chance to just – I messed up on my other kids so bad . . . I should have been there for them, but I wasn't. I was doing drugs. I know this. That's something I have to live with every day." She repeatedly told the court, "I just don't want to give my son up." As her testimony reflects, the mother advanced her own interests in retaining her parental rights to K.L. but did not set forth reasons to support her contention that the retention of her rights was in the child's best interest.

By the time of the final hearing, K.L. was almost a year old. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). K.L. has lived in the same foster home with his two siblings since approximately a week after his birth. According to the caseworker, K.L. was "doing really well" with his foster family. He is developmentally on target, does not seem to have issues stemming from his birth,[5] and appears bonded to his foster family. The foster family wishes to adopt K.L. The mother also testified she believed K.L. was in a safe place with his foster parents and that the foster parents take good care of him and his siblings.

---

[5] The record shows the only complication K.L. had at the time of his birth was fluid in his lungs, which required that he remain in the neo-natal intensive care unit for approximately one week.

The testimony does show the mother consistently visited K.L., missing only three weekly visits in a year's time. She testified she loved K.L. and the record shows the visits with the child went well and she was protective and loving toward him. Nevertheless, the trial court could have concluded it was in K.L.'s best interest to remain with his foster family with his siblings.

Most significantly, the mother has failed to maintain sobriety, last testing positive for methamphetamine in December 2015.[6] She tested positive three times after K.L. was removed from her care. She repeatedly denied using methamphetamine but consistently tested positive for the drug. She also agreed her life was unmanageable and her "life is what I made it. It's chaotic. It's crazy." She also agreed that her inability to stop using drugs made it difficult to raise a child. But, she argued, "that doesn't mean that I can't try."[7] As noted, she also told the court she was clean at the time of the final hearing; however, "evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue." *In re M.G.D.,* 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A factfinder is "not required to ignore a long history of dependency and abusive behavior merely because it abates as trial approaches." *Id.* at 513. Given the mother's long history of drug abuse and her inability to remain sober, the trial court could have

---

[6] The Department caseworker testified he had not asked the mother to submit to drug testing since the positive December 2015 test. He told the court he had been unable to contact her and admitted he had "dropped the ball" regarding this case.

[7] She testified, "I'm letting a substance ruin my life. I've let it – it's taken everything from me, and all I do is just pray that God can restore my family to me. For restoration of my family when my kids are old enough to come and find me. I pray for that. I can't justify or say anything I did was right, because it's not, and I'm not asking y'all to feel sorry for me, because yes, I do know right from wrong, and I did choose drugs over my kids."

determined the risk is great that the mother's recent sobriety would not continue if K.L. were returned to her care. *See In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) (a trial court may consider a parent's history of drug use and irresponsible choices when making a determination to terminate a parent's rights to her children).

The record contains other evidence weighing against the trial court's best interest finding. However, evidence cannot be read in isolation; it must be read in the context of the entire record. *In the Interest of K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *45 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.). The mother points to the facts she completed an assessment and a parenting class required under her service plan, started drug treatment, and maintained stable housing. But, the record also shows she failed to maintain stable employment, failed to maintain contact with the Department, and failed to complete her required counseling sessions and drug treatment.

The child's ad litem told the court that while she sympathized with both parents and commended the mother's recent efforts, termination of the mother's parental rights was in K.L.'s best interests. The CASA[8] representative and the foster parents' attorney voiced similar opinions. The caseworker testified he would not oppose continuing the Department case concerning K.L. to permit the mother time to complete the services required under her service plan but ultimately told the court he did "not think it would be in [K.L.'s] best interest" to be returned to the mother.

---

[8] Court Appointed Special Advocate appointed for K.L.

Reviewing the sufficiency of evidence, we keep in mind that it was the task of the trial court to assess the credibility and demeanor of the witnesses who testified before it. *In re H.R.M.,* 209 S.W.3d 105, 109 (Tex. 2006).  After viewing all of the evidence in the light most favorable to the best interest finding, we conclude the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of the parent-child relationship between the mother and her child was in her child's best interest.  We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's best interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in K.L.'s best interest.  Thus, the evidence was legally and factually sufficient to support the best interest finding. We overrule the mother's appellate issues.[9]

## Conclusion

Having resolved the mother's issues against her, we affirm the order of the trial court.

James T. Campbell
Justice

---

[9] The trial court also found clear and convincing evidence to support termination of the mother's parental rights to K.L. under subsections 161.001(b)(1)(D) and (O). Because only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest and we have found sufficient evidence to support the trial court's findings under sections 161.001(b)(1)(E) and 161.001(b)(2), we need not address the mother's contentions with regard to the other predicate grounds found by the trial court.  *See In re D.S.,* 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2001, no pet.).