# Court of Appeals
## Tenth Appellate District of Texas

10-24-00392-CV

In the Interest of E.W., J.S., M.D., and L.P., Children

On appeal from the
County Court at Law of Walker County, Texas
Judge Tracy M. Sorensen, presiding
Trial Court Cause No. 23-19318

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

The fathers of E.W., J.S., and M.D. and the mother of E.W., J.S., M.D., and L.P. (Mother) each filed a notice of appeal from the trial court's order terminating their parental rights to their children.[1] Counsel for the fathers and counsel for Mother have now filed *Anders* briefs, asserting that they diligently reviewed the record and that, in their opinion, the appeal is

---

[1] The trial court found by clear and convincing evidence that E.W.'s father had violated Family Code subsections 161.001(b)(1)(D), (E), and (N) and that termination was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b). The trial court further found by clear and convincing evidence that J.S.'s father, M.D.'s father, and Mother had each violated Family Code subsections 161.001(b)(1)(D) and (E) and that termination was in their children's best interest. *See id.* The parental rights of L.P.'s father were not terminated.

frivolous.[2] *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex. App.—Waco 2002, order) (per curiam) (applying *Anders* to termination appeal).

Counsel's briefs meet the requirements of *Anders*; they each present a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) ("In Texas, an *Anders* brief need not specifically advance 'arguable' points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities."); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991). Counsel have carefully discussed why, under controlling authority, there is no reversible error in the trial court's order of termination. Counsel have further informed us that they have served each appellant with a copy of his or her respective *Anders* brief, informed each appellant of his or her right to review the appellate record and to file a *pro se* response, and provided each appellant with a form motion for *pro se* access to the appellate record. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014); *Stafford*, 813 S.W.2d at 510 n.3; *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978); *see also Schulman*, 252 S.W.3d at 408–09.

---

[2] All three fathers are represented by the same appellate counsel. The fathers' counsel filed a separate *Anders* brief for each of them. Mother is represented by different appellate counsel from the fathers' counsel. Mother's counsel also filed an *Anders* brief for her.

By letter, we also informed E.W.'s father, J.S.'s father, M.D.'s father, and Mother of their right to review the record and to file a *pro se* response. None of the appellants filed a *pro se* response.

Upon receiving an *Anders* brief, we must conduct a full examination of all the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 349–50, 102 L.Ed.2d 300 (1988). An appeal is "wholly frivolous" or "without merit" when it "lacks any basis in law or fact." *McCoy v. Court of Appeals*, 486 U.S. 429, 438 n.10, 108 S.Ct. 1895, 1902 n.10, 100 L.Ed.2d 440 (1988). We have reviewed the entire record and counsel's briefs and have found nothing that would arguably support an appeal.[3] *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005)

---

[3] Counsel reviewed the sufficiency of the evidence supporting the trial court's findings as to each appellant under Family Code subsections 161.001(b)(1)(D) and (E) and determined that it would be frivolous to attack the findings.

The record here shows that C.R., who, at the time of trial, had known the family for about fourteen years and who, until this case began, had considered Mother to be a friend, testified that Mother called her when the incident that led to the removal of the children occurred. C.R. went to the scene of the incident, and Mother told her that she had "beat my boy like he was a grown man." Mother explained to C.R. that she was "whipping" her oldest son, a child who is not the subject of this case, with a belt when he ran off. Mother and a friend eventually caught the child, and the friend held the child down so that Mother could "whoop him again." Mother told C.R. that the child then fell to the ground, and Mother "just waylaid on him." When asked what "waylay" meant, C.R. replied that Mother "was using her fist or whatever she could to hit him, and that if she had a gun, she'd have blew his head off." C.R. testified that she then saw the child and that he had injuries. C.R. further stated that while Mother's other children who are the subject of this case were not injured by Mother that day, they were present at that time. *See In re L.M.N.*, No. 01-18-00413-CV, 2018 WL 5831672, at *16 (Tex. App.—Houston [1st Dist.] Nov. 8, 2018, pet. denied) (mem. op.) ("[A] parent's physical abuse of one child in the home supports a finding of endangerment as to the other children also present in the home. And the fact that one child witnesses violence directed at another child in the home supports a finding of endangerment." (citations omitted)). The evidence shows that Mother was thereafter arrested and ultimately pleaded guilty to the offense of injury to a child. Mother was then placed on deferred adjudication community supervision for six years.

C.R. additionally testified that Mother had told her about other incidents during which she would "whoop" the children. Mother told C.R. that she had also once hit E.W. in the face with a phone. C.R. then testified that she had concerns that the children were in harm's way because Mother was

("Due to the nature of *Anders* briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible

not properly watching them. *See In re C.M.*, No. 10-24-00215-CV, 2025 WL 411686, at *2 (Tex. App.—Waco Feb. 6, 2025, no pet.) (mem. op.) ("Scienter is not required for a parent's own acts to constitute endangerment under subsection (E)."). C.R. explained that on one occasion, Mother had a fire going in the driveway. As C.R. pulled up to the house, she saw J.S. standing at the fire. Mother was in the house, and no other adults were outside. Before C.R. could say anything, J.S. reached and grabbed a rod that was sticking out of the fire and burned his hand. C.R. also mentioned during her testimony that M.D. and L.P would, at times, run around outside in their diapers while Mother was inside the house even though there were ponds and a highway nearby.

C.R. testified that the children's fathers knew what the children were living in but that none of them "was willing to step up to do anything." Lisa Olsen, the caseworker for the family, also testified that when she first discussed with E.W.'s father the reason for why E.W. was in DFPS's care, E.W.'s father stated specifically that "he knew something wasn't right with [Mother]."

The evidence further shows that E.W.'s father explained to his DFPS counselor that E.W. was not placed with him at the time of the children's removal because he had criminal charges pending against him for hitting E.W. when E.W. was seven or eight years old. While this case was pending, E.W.'s father also tested positive for marijuana and failed to participate in random drug testing on a regular basis. *See In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied) ("Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct under subsection (E)."); *D.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-18-00770-CV, 2019 WL 1526429, at *4 (Tex. App.—Austin Apr. 9, 2019, no pet.) (mem. op.) (stating that missed drug tests can be presumed to be positive). The evidence also shows that J.S.'s father is a registered sex offender. *See In re T.L.E.*, 579 S.W.3d 616, 626 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("[E]vidence of Father's prior conviction for indecency with a child by contact is sufficient to support the trial court's endangerment finding under section 161.001(b)(1)(E)."). Caseworker Olsen further testified that J.S.'s father was incarcerated when this case started until he was paroled around March 2024. *See Asjes v. Tex. Dep't of Protective & Regulatory Servs.*, 142 S.W.3d 363, 370 (Tex. App.—El Paso 2004, no pet.) ("While a parent's incarceration, standing alone, will not prove endangerment under subsection (E), it is a factor for consideration by the trial court on the issue of endangerment."). Likewise, the evidence shows that M.D.'s father had been in jail for most, or all, of the pendency of this case. In 2018, M.D.'s father pleaded guilty to violating a protective order and was sentenced to sixty days' confinement in the county jail. In 2021, M.D.'s father then pleaded guilty to the offense of assault causing bodily injury, family violence. M.D.'s father was sentenced to twelve months' confinement in the county jail, but his sentence of confinement was suspended, and he was placed on community supervision for eighteen months. M.D.'s father's community supervision was then revoked in 2023. At that time, M.D.'s father also pleaded guilty to driving while intoxicated with a child passenger and was sentenced to 225 days' confinement in county jail. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment."); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment.").

In light of the foregoing, we conclude that the evidence is sufficient to establish that each appellant violated subsection 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam) (holding due process and due course of law requirements mandate appellate court detail its analysis if appellate court affirms termination on either subsection 161.001(b)(1)(D) or (E)).

error but found none, the court of appeals met the requirements of Texas Rule of Appellate Procedure 47.1."); *Stafford*, 813 S.W.2d at 509. Accordingly, we affirm the trial court's order of termination.

Mother's counsel has filed a motion to withdraw as was historically required to comply with the procedures set forth in *Anders* and its Texas progeny. However, the Texas Supreme Court has stated that the lack of an arguable issue and the subsequent filing of a motion to withdraw and an *Anders* brief in support may not be considered "good cause" for purposes of granting the *Anders* motion to withdraw pursuant to the Family Code. *See In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016) (per curiam) ("[A]n *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal, may be premature."). Mother's counsel does not set forth any "good cause" outside the filing of the *Anders* brief in his motion to withdraw. We will therefore deny the motion to withdraw.

If Mother, E.W.'s father, J.S.'s father, or M.D.'s father, after consulting with his or her appointed appellate counsel, desires to file a petition for review, counsel is still under a duty to timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.*; *In re G.P.*, 503 S.W.3d 531, 535 (Tex. App.—Waco 2016, pet. denied); *see also* TEX. FAM. CODE ANN. § 107.016.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  June 5, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

